IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 13-cv-00963-LTB

MICHAEL MAEZ, JR.,

        Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

        Defendant.

_____

ORDER
_____

        Plaintiff Michael Maez Jr. appeals from the Social Security Administration Commissioner's (the "Commissioner") final decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), filed pursuant to Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433, 1381-1383c. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral argument will not materially aid in resolving this appeal. After considering the parties' arguments and the administrative record, for the reasons below, I affirm the Commissioner's final order**.**

## I. STATEMENT OF THE CASE

        Plaintiff seeks judicial review of the Commissioner's decision denying his May 5, 2010 applications for DIB and SSI. [Administrative Record ("AR") Doc. # 11-5, 2-7]. His application was initially denied at the administrative level. [*Id*. at 11-4, 4-9]. Plaintiff thereafter filed a written request for a hearing on November 15, 2010. [*Id*. at 10-11]. An Administrative Law Judge ("ALJ") subsequently conducted a hearing on March 20, 2012 (*id.* at 11-2, 35-63), and issued a written ruling on March 29, 2012 (*id.* at 13-34). The ALJ denied Plaintiff's

application on the basis that he was not disabled during the relevant time period because he was capable of performing work in the national economy given his residual functional capacity ("RFC"), age, education, and work experience. [*Id.* at 28-29]. Plaintiff appealed the denial of his application to the Social Security Administration Appeals Council ("Appeals Council"). [*Id.* at 8-12]. On February 28, 2013, the Appeals Council declined to review the decision of the ALJ, making the denial final for the purpose of judicial review. [*Id.* at 2-7]. In denying review, the Appeals Council informed Plaintiff that it "considered the reasons you disagree with decision [, and it] found that this information does not provide a basis for changing the Administrative Law Judge's decision." [*Id.* at 2-3].

Plaintiff timely filed his Complaint with this Court seeking review of the Commissioner's final decision. [Doc. # 1].

## II. FACTS

The facts are largely undisputed and extensively provided in the ALJ's order. As such, I provide a limited factual background as relevant here.

Plaintiff was born on January 21, 1967, was 39 years old on his alleged onset date of October 1, 2006, and was 45 at the time of the ALJ's decision. [AR Doc. # 11-5, 2]. He has a high school equivalent education, is able to communicate in English, and his past relevant work history consists of golf course groundskeeper and warehouse worker. [*Id.* at 11-2, 28]. Pursuant to 20 C.F.R. § 404.130, in order to be eligible for benefits, Plaintiff must prove that his disability began before the date through which he remained insured, which in this case is December 31, 2006. [*Id.* at 18]. Thus here, the relevant time period for determining disability is October 1, 2006, through March 29, 2012, the date of the ALJ's decision. [*See id.*]; 20 C.F.R. § 404.130.

During the relevant time period Plaintiff earned no income. [*Id.*] Plaintiff's earliest medical reports provided begin in 2006 with an emergency department visit for acute alcohol intoxication and several other visits to the emergency room for other alcohol related medical issues including injuries he incurred while intoxicated in 2007, being stabbed while intoxicated in 2008, and other intoxication-related injuries in 2009, 2010, and 2011. [*See* AR Doc. # 11-7, 49-68]. Otherwise no evidence was presented as to Plaintiff's treatment for medical issues from 2006-2010. [*Id.* at 1-93].

On December 1, 2007 Carlos Rodriguez, Ph.D. filled out a consultative examination report and Colorado DHS MED-9 form. [*Id.* at 2-3 & 47-48]. In these reports, Dr. Rodriguez noted that his diagnoses were significantly based on Plaintiff's reports of his mental well-being. [*Id*. at 2-3]. He diagnosed Plaintiff with major depression, post traumatic stress disorder, and alcohol/marijuana abuse and provided that further examination would be necessary to determine whether Plaintiff experienced borderline intellectual functioning and/or academic developmental disorder. [*Id.*] Dr. Rodriguez also provided that "these conditions can be expected to persist beyond a 12-month period. [Plaintiff] is not capable of managing monthly benefits on his own behalf. [Plaintiff] is in need of evaluation for the presence of significantly below average intellectual functioning." [*Id*. at 3].

Plaintiff returned to Dr. Rodriguez in October 2010 and March 2012 for additional consultative examinations. [*See id.* at 11-7, 90-93 & 11-8, 61-65, 91-98]. In the October 2010 examination, Dr. Rodriguez diagnosed Plaintiff with major depressive disorder, post traumatic stress disorder, and marijuana/alcohol abuse and indicated that further testing was necessary to rule out borderline intelligence, dementia, and psychosis. [*Id.* at 11-7 90-93 & 11-8, 66]. Dr.

Rodriguez also found that Plaintiff's psychological condition has lasted, and is likely to last, more than 12 months. [*Id.* at 11-8, 66]. In March 2012, Dr. Rodriguez again diagnosed Plaintiff with major depression, post traumatic stress disorder, and marijuana/alcohol abuse and again indicated that further testing was necessary to rule out borderline intellectual functioning and academic developmental disorder. [*Id.* at 95]. He also diagnosed Plaintiff with having prominent anti-social personality disorder traits, provided that he did not think Plaintiff could manage his benefits on his own behalf, and assessed Plaintiff with a global assessment functioning score ("GAF") of 40-45. [*Id.*]

In January 2008, Plaintiff underwent a physical consultation by Velma Campbell, M.D. [*Id.* at 4-6]. Dr. Campbell reported that Plaintiff sat in the interview without pain behaviors or distress, had a normal gait without use of an assistive device, and moved around the examination room and on/off the examination table without help or support. [*Id.* at 5]. Dr. Campbell also reported that Plaintiff's head, neck, extremities, chest, spine, heart, and lungs were all essentially functioning normally and possessed normal range of motion. [*Id.* at 4-6]. As a result, Dr. Campbell provided that her physical findings were consistent with "activity levels in the sedentary to light range, with lifting and carrying up to 20 [pounds] up to 3 hours a day, standing and walking less than 4 hours a day, as well as postural activities." [*Id.* at 6]. She also stated that Plaintiff's "[s]itting is not limited and use of the upper extremities is not impaired, including reaching, manipulation of small objects and fine coordination." [*Id.*]

Plaintiff underwent another psychological examination by Brett Valette, Ph.D. in March 2008 in which Dr. Valette diagnosed Plaintiff with the nonspecific mood disorder of depression and a nonspecific personality disorder with antisocial and avoidant personality traits. [*Id.* at 10].

Dr. Valette provided that Plaintiff could manage his own funds, "does not fit a criteria for major depression," and had a cognitive functioning in the low average range of intellectual ability but did not have any memory functioning impairments. [*Id.*] In Plaintiff's examination, Dr. Valette provided that he did not observe any indications of anxiety, panic, or post traumatic stress disorder. [*Id.*] All of these observations led Dr. Valette to assess Plaintiff's GAF at 60 to 65, indicating moderate to mild psychological symptoms. In October 2010, Plaintiff underwent a second psychological consultative examination with Dr. Valette in which Dr. Valette diagnosed Plaintiff with Dysthymia, Antisocial Personality Disorder, and assessed a GAF score of 50 to 55, indicating moderate limitations. [*Id.* at 68-70]. Dr. Valette provided that Plaintiff could manage his own funds, claims to be isolating and obssessing, that "[h]is general fund of information is below average," and that Plaintiff's "main complaint in not being able to work [is] not being able to be around people." [*Id.* at 70].

Plaintiff began receiving treatment from providers at Pueblo Community Health Center ("PCHC") in August 2010. [*Id.* at 11-8, 67-90]. Plaintiff reported to treatment providers at PCHC a history of on-and-off back pain for 10 years, stomach pain, insomnia, obesity, chest pain, and hepatitis C. [*Id.*] However, throughout the treatment period, the treatment records provide that Plaintiff had full strength, a normal gait and range of motion in his back and extremities. [*See id.*] Treatment providers did report some pain in his lower back and Plaintiff was prescribed pain relievers. [*Id.*] In September 2010, PCHC noted that x-rays of Plaintiff's low back showed moderate arthritic changes, an ultrasound of his upper quadrant showed some fatty infiltration of the liver and a possible gallstone, and his blood work came back in a diabetic range and Plaintiff was provided with a recommended course of treatment. [*Id.*] Throughout his

treatment at PCHC, Plaintiff complained of lower back pain and reported that it was controlled with his prescribed medications. [*Id.*]

On October 15, 2010, Plaintiff underwent a physical examination performed by consultative physician Dr. Charlene Borja. [*Id.* at 11-7, 74-89]. Plaintiff reported suffering from hepatitis C, a herniated disc, and lower back pain, but also reported that he could dress and bathe himself, cook and clean and take care of his blind father. [*Id.* at 74-79]. During the examination, Dr. Borja reported that Plaintiff moved throughout the examination room and on and off the examination table with mild discomfort. [*Id.* at 76]. Dr. Borja diagnosed Plaintiff with hepatitis C, low back pain with redicular symptoms, degenerative disc disease, and obesity. [*Id.* at 79]. As a result, Dr. Borja provided that Plaintiff: could stand or walk 6 hours in an 8 hour work day with breaks every 1-2 hours; could sit 8 hours in an 8 hour work day with breaks every 1-2 hours; could routinely lift and carry up to 30 pounds; should not engage in repetitive bending, crouching or stooping; had no manipulative limitations; had no communicative or speech/hearing limitations; and should be restricted from working at heights, on stairs, or on ladders. [*Id.*]

On November 2, 2010, State agency psychological consultant Robert Brill Ph.D. examined Plaintiff's medical records and found Plaintiff not disabled. [*Id.* at 11-3, 4-25]. Specifically, Dr. Brill provided that Plaintiff does experience moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. [*Id.*] He further provided that, based upon his review of the medical record, Plaintiff experienced no more than moderate mental limitations, and that he retained a residual functional capacity consistent with basic work and would function

...

best in a work setting with few social demands [*Id.*]

### III.  LAW

To qualify for DIB under sections 216(i) and 223 of the SSA, an individual must meet the insured status requirements of these sections, be under age 65, file an application for DIB for a period of disability, and be "disabled" as defined by the SSA.  42 U.S.C. §§ 416(i), 423.  A Five-Step sequential evaluation process is used to determine whether a claimant is disabled under the SSA, which is generally defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C.§ 1382c(a)(3)(B); *see also Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).

Step One asks whether the claimant is presently engaged in substantial gainful activity.  If he is, DIB is denied.  *See* 20 C.F.R. § 404.1520.  Step Two is a determination of whether the claimant has a medically severe impairment or combination of impairments, as governed by 20 C.F.R. § 404.1520(c).  If the claimant is unable to show that his impairment(s) would have more than a minimal effect on his ability to do basic work activities, he is not eligible for DIB.  *See* 20 C.F.R. § 404.1520(c).  Step Three then assesses whether the impairment is equivalent to one of a number of listed impairments deemed to be so severe as to preclude substantial gainful employment.  *See* 20 C.F.R. § 404.1520(d).  If the impairment is not listed, he is not presumed to be conclusively disabled.  Step Four then requires the claimant to show that his impairment(s) and assessed Residual Functional Capacity ("RFC") prevent him from performing work that he has performed in the past.  If the claimant is able to perform his previous work, he is not

disabled. *See* 20 C.F.R. §§ 404.1520(e), (f). Finally, if the claimant establishes a *prima facie* case of disability based on the previous four steps, the analysis proceeds to Step Five where the Commissioner has the burden of proving that the claimant has the RFC to perform other work in the national economy in view of his age, education and work experience. *See* 20 C.F.R. § 404.1520(g).

As relevant here, a claimant is required to establish that he became disabled prior to the expiration of his insured status. 20 C.F.R. § 404.130; *see also Potter v. Sec'y of Health & Human Servs.,* 905 F.2d 1346, 1347-48 (10th Cir. 1990).

### IV. ALJ's RULING

The ALJ found that Plaintiff had met the insured requirements of the SSA through December 31, 2006. [AR Doc. # 11-2, 18]. She ruled that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 1, 2006, through the date Plaintiff was last insured, December 31, 2006. [*Id.*] The ALJ found that through the date last insured, the Plaintiff had the following sufficiently severe impairments: chronic back pain due to degenerative disc disease; hepatitis C; obesity; affective disorder; personality disorder; and a history of alcohol abuse (Step Two). [*Id.*] However, the ALJ then determined that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled one of the listed impairments (Step Three) in 20 C.F.R. Pt. 404, Subpt. P, App. 1. [*Id.* at 19-21]. Because the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equals a listed impairment, she then assessed Plaintiff's RFC. [*Id.* at 21-28].

The ALJ evaluated the evidence and found that through the date last insured, Plaintiff had the RFC to perform work "light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)." [*Id.*]  The ALJ further provided that Plaintiff "is limited to work involving a Specific Vocational Preparation (SVP) level equal to 3 or less.  This means [Plaintiff] can understand, remember, and carry out only simple instructions, and not complex or detailed instructions" [*Id.* at 21].  As a result of Plaintiff's RFC assessment, the ALJ found that Plaintiff was not able to perform any past relevant work (Step 4).  [*Id.* at 28].  Because the ALJ concluded at Step Four that Plaintiff was unable to perform past relevant work, the ALJ continued to Step Five, and under that Step concluded that there were other jobs existing in the national economy that Plaintiff was able to perform.  [*Id.* at 28-29].  Consequently, the ALJ concluded that Plaintiff was not disabled between his alleged onset date and the date last insured.  [*Id.* at 29].

## V.  STANDARD OF REVIEW

I review the Commissioner's decision (expressed here as the ruling of the ALJ) "to determine whether the factual findings are supported by substantial evidence in light of the entire record and to determine whether the correct legal standards were applied." *Williamson v. Barnhart,* 350 F.3d 1097, 1098 (10th Cir. 2003).  My review of the factual findings is to determine whether they, "are based upon substantial evidence, and inferences reasonably drawn therefrom.  If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (quotations omitted).  It requires "more than a scintilla but less than a preponderance." *Zoltanski v. F.A.A.*, 372 F.3d

1195, 1200 (10th Cir. 2004).

## VI.  APPEAL

Plaintiff challenges several of the ALJ's determinations at Step Four.  Specifically, Plaintiff contests the ALJ's evaluation of the opinions of: consultative physician Dr. Charlene Borja; State agency psychological consultant Dr. Robert Brill; consultative psychologist Dr. Carlos Rodriguez; and consultative physchologist Dr. Brett Valette.  [*See* Doc. # 15].

As is applicable here, unless the opinion of a treating source is given controlling weight, an ALJ must explain the weight given to the opinion of reviewing physicians.  20 C.F.R. § 404.1527(e)(2)(ii).  In evaluating a reviewing physician's opinion, an ALJ must review it based on the factors listed in 20 C.F.R. § 404.1527(a) to (d), "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations [the physician] provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 404.1527(e)(2)(ii).  It is the ALJ's duty to give consideration to all the medical opinions in the record.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  She must also discuss the weight she assigns to such opinions.  *See id.* §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.").  However, when examining these opinions the ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

Plaintiff cites four opinions that allegedly were not properly weighed: three consulting-examiner reports and a state agency consultation report. But does not identify any inconsistencies either among these medical opinions or between the opinions and the ALJ's RFC. *See Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.")

### 1.    Dr. Borja

The first opinion that Plaintiff complains was not properly weighed is a physical consultative examination report prepared by Dr. Charlene Borja. Plaintiff argues that while the ALJ purported to give great weight to Dr. Borja's opinion, the ALJ did not incorporate Dr. Borja's opinion that Plaintiff could stand/walk for six hours in an eight hour work day with breaks every one to two hours into her RFC finding. [*See* Doc. # 15, 24-28]. Essentially, Plaintiff seems to be arguing that because Dr. Borja concluded that Plaintiff required breaks from standing every one to two hours, and because the ALJ gave Dr. Borja's opinion considerable weight, the RFC should have reflected this limitation. Plaintiff contends that to do otherwise would be to "pick and choose" from within an opinion, contrary to the procedure outlined in *Robinson*.

This argument, however, would force the Court to reweigh the evidence. *See Harper v. Colvin*, 528 Fed. Appx. 887, 890 (10th Cir. 2013) (citations omitted) (holding that the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency"). It is uncontested that Dr. Borja was not a treating physician entitled to controlling weight. The ALJ nonetheless decided to give her opinion considerable or "great" weight but did not adopt it

unreservedly.  Instead, the ALJ concluded that Plaintiff would merely need those breaks typically allotted in an eight hour work day.  The ALJ committed no legal errors when she decided, in light of the entire record, that Plaintiff was slightly less restricted than Dr. Borja suggested.  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question").  Thus, reversal with regards to Dr. Borja's opinion is not warranted.

        2.        **Dr. Brill**

With regards to the opinion of Dr. Robert Brill, Plaintiff, similar to his argument about Dr. Borja, seems to be arguing that because Dr. Brill concluded that Plaintiff should be limited in his social contact with others, and because the ALJ gave the portion of Dr. Brill's opinion that restricted Plaintiff to simple, basic work great weight, the RFC should have also reflected Dr. Brill's social limitation as well, and the ALJ's failure to do so was improper.  I disagree.

As discussed above, this argument would force me to reweigh the evidence.  *See Harper*, 528 Fed. Appx. at 890.  Dr. Brill was also not a treating physician entitled to controlling weight.  The ALJ gave his opinion some weight but did not adopt it unreservedly or in its entirety.  Instead she chose to adopt the portions of Dr. Brill's opinion that were supported by the entire record and discount those portions inconsistent with the record.  This was not legal error.  *Chapo*, 682 F.3d at 1288.   As the ALJ cited, the record reflects that Plaintiff was a social person with friends and an active nightlife.  For example, emergency room treatment records reflect that Plaintiff was frequently found drunk in yards and in front of bars. [*See, e.g.* AR. Doc. # 11-7, 12-46, 49- 67].  He once passed out from drinking in a friend's garage and spoke to treatment

providers at PCHC about his girlfriend and the massages she gave him. [*See e.g. id.* at 11-8, 88]. Thus, the ALJ's decision, in light of the entire record, that Plaintiff was less socially restricted than Dr. Brill suggested was proper.

### 3. Dr. Rodriguez

Plaintiff also challenges the ALJ's treatment of Dr. Rodriguez's opinions. Specifically, he claims that the ALJ improperly noted that Plaintiff saw Dr. Rodriguez at the request of his attorney, improperly noted that Dr. Rodriguez's opinion was based on a single RFC form without accompanying narration, and improperly noted that Dr. Rodriguez's opinion was based on Plaintiff's subjective complaints.

Dr. Rodriguez is a consultative psychologist, and as such the ALJ must review his opinion based on the factors listed in 20 C.F.R. § 404.1527(a) to (e), and discuss the weight she assigns to the opinion. *See id.* §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii) ("[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."). Under the required framework, the ALJ gave proper consideration to Dr. Rodriguez's opinion. She considered the required factors, specifically pointing to the source of Plaintiff's visit with Dr. Rodriguez, the source of information Dr. Rodriguez based his opinion on and its reliability, the consistency of Dr. Rodriguez's opinion with other evidence in the record, and the depth of his explanation. The ALJ's finding that Plaintiff's visits to Dr. Rodriguez were at the request of

Plaintiff's attorney was proper. Additionally, it was not the only reason the ALJ provided for the weight she gave his opinion. The ALJ noted that Dr. Rodriguez "based his findings wholly on [Plaintiff's] subjective reporting of symptoms to him, which are not substantiated by the record, which shows no actual treatment for his conditions." [AR Doc. # 11-2, 27]. The ALJ found Plaintiff's testimony not credible, which is not disputed here and thus will not be further discussed. The ALJ also noted that in all of the forms Dr. Rodriguez filled out, he did not fill out the narrative portion of the form but simply did the check the box elements, which, the ALJ properly noted, could not be considered in isolation. [*Id.*] Lastly, the ALJ noted that Dr. Rodriguez failed to provide what Plaintiff could do given the limitations he provided. [*Id.*] Based on all of these findings, it was reasonable for the ALJ to discount Dr. Rodriguez's opinion. There is no reason to believe that any further analysis or weighing of this opinion could advance Plaintiff's claim of disability, and as such any alleged error would be harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).

### 4. Dr. Valette

Plaintiff also complains that the ALJ failed to provide what weight she assessed the opinions of consultative psychologist Dr. Brett Valette. According to 20 C.F.R. § 404.1527(c)(2), if the medical opinions in the record are inconsistent with each other, the ALJ must weigh all the evidence. *See* 20 C.F.R. § 404.1527(d). However, if medical opinions are consistent, the ALJ need not weigh them. 20 C.F.R. § 404.1527(c)(1). Dr. Valette's reports of Plaintiff's IQ, GAF scores, and reported limitations are consistent with Dr. Brill and Dr. Rodriguez's reports as well as the ALJ's assessed limitations. Because Dr. Valette's reports are

consistent with regards to the determinative factors, the ALJ did not err in not identifying the weight he gave to his opinion.

## VII.  CONCLUSION

For the foregoing reasons, I AFFIRM the Commissioner's final order.

Dated: July __23__, 2014, in Denver, Colorado.

BY THE COURT

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE